This time we'll hear Alliance Shippers v. Garcia. Good morning, Your Honors. Ronald Horowitz on behalf of the Plaintiff and the Count of Alliance Shippers. Recognizing that my argument time this morning is somewhat limited, I'll get right to the point. To not overturn the District Court's opinion would obviously be unfortunate to my client, but moreover would be a manifest injustice, excuse me, manifest injustice. Because the amended complaint in this case sufficiently pled facts through 84 paragraphs, 15 pages of schedules. The 84 paragraphs set out the relationship between the parties to this case and the underlying judgment debtor and what these defendants did with the judgment debtor's monies. And that was specifically set forth in the 15 pages of schedules. By date, amount, check money, check, excuse me. We just didn't attach transfers out of the judgment debtor to the defendants. We candidly put schedules that showed monies going into the judgment debtor from these defendants. And you know what the irony of this case is, Your Honors? Is that the parties do not disagree with those facts. Well, your adversary doesn't agree sitting there anyway. Well, what we disagree on, which is the ultimate issue in this case, is whether those, excuse me, whether those transfers to the defendants were improper repayments of capital contributions or were they proper repayments of loans. That, I must submit to Your Honors, is the ultimate issue for the trial court, not for a judge on a motion to dismiss. You know, with the District Court, and I'm reading that opinion over and over again, I see that her displeasure with the amended complaint was that there were not sufficient facts pled to establish fraud. But, and this is a big, big but, you do not have to prove fraud when you take an improper capital contribution. Perhaps these defendants thought when they got these transfers, I'm just getting repayments of loans. You don't have to prove bad faith, egregious conduct, just that it was wrong. But on the other hand, when discovery flushes out the facts and circumstances regarding each transfer, yes, maybe fraud will be established. This company is in bankruptcy, right? No. Not? Chris Packer, we're talking about the judgment debtor? Ah, I see. The subsidiary that you're talking about is not in bankruptcy. The underlying judgment debtor, who my client received a judgment of, is not in bankruptcy. They just went out of business in about 2011. If they owe you money, you could put them into bankruptcy, couldn't you? I could, but yes, you're right. That's a very good point you raise. I could have put them in involuntary, assuming I got two more creditors to join with me, and the trustee could have done what I'm doing. But you know something? In my practice, why am I going to be working hard for my client and some other creditors? So I want to hone in on this point. It's not necessary to prove fraud in this case. It could have been a good faith receipt of transfers because the loans that the defendants thought they were made were really capital contributions, investments into their company. And that's why I pled this equitable subordination that you see in bankruptcy courts, but my brief points out a couple of cases where you've seen them around the country. It's not something you typically see or hear or read about in New York jurisprudence, but that doesn't mean they're home free. If they took capital contributions before creditor payments, such as my clients, they have to give them back. And I think there's enough – well, I don't think. I know there's enough in this amended complaint to go forward with this case. You know, judges, two years ago the Supreme Court in the Shelby case, which was mentioned in my brief, seemed to me, from my reading of that opinion, to loosen up what was being pronounced in the 07-09 decisions from the Supreme Court. In essence, the Shelby case had a short and plain statement. Don't get too flowery, but get specific where you have to. If this case is only about fraud, maybe I have to go further. I'm not going to stand here and say that it's a work of art, but I'm going to say to you wholeheartedly that it was sufficient to go forward in this case based on the bare-bone factual allegations. If you're saying it's a fraudulent transfer, you're saying it's a fraud. If you – if this case falls on a fraudulent transfer statute, then you do have to prove more. You don't really have to prove fraud. You have to prove insolvency. Your other claim is equitable subordination. Isn't that really sort of a bankruptcy concept? It is. That's where it started, but it doesn't end there. It doesn't end there. Do you have a New York case for that proposition? That it doesn't end there? I didn't find any cases using those words. But by statutes, of course. The bankruptcy code says that the applications for relief is only available – the relief that's available under the bankruptcy code is only available in bankruptcy. So we can't look to the bankruptcy code to say you can make a claim for recharacterization or equitable subordination. Just let me finish so I can make sure I understand. So now I'm looking – it's not under the bankruptcy code that you can make these claims. So what other body of law are you drawing on to say these are valid claims? Well, there are statutes throughout the country that say that capital contributors cannot receive back their investment before the corporation's creditors are paid. That's just basic hornbook statutory law. I agree with you. There's not much, if any, law in New York that says that. But just think about the havoc that would grow on creditors if corporate principals, insiders – these are just not – these are the father and son owners of the company who are just able to pull out the money, go off and retire, and creditors can do whatever they want to do. That would just wreak havoc in the debtor-creditor relationship. So I want to close by saying that when the initial judge, Judge Karas, spent an inordinate amount of time at a conference talking about what you and I just talked about and he wanted me to flush it out a little bit better, and I tried. At least I thought I'd comply with it. I wasn't giving Judge Karas lip service or ignoring him. And then, obviously, the motion came thereafter, and Judge Karas was replaced by Judge Forrest, and Her Honor and I never had any discussion at all. I never had an oral argument. She just looked at the amended complaint, and as I said earlier in my argument this morning, she was concerned that there wasn't enough facts to plead a claim for fraud. But that's not what this case is solely about. It may develop into that later on. Thank you. Thank you. We will reserve decision. There's nobody else to argue. Thank you. Just you. Thank you very much. We'll reserve decision. One last thing, please. Quickly. Yeah, sure. If you disagree with me, like the district court Judge Forrest had said, about the amendment complaint wasn't pled sufficiently, I think it would behoove all of us to say give him one last opportunity to satisfy the standard that we say applies to this. The leave to replete is certainly a more preferred remedy than an outright dismissal. Thank you. Thank you, Judge. We have reserved decision.